UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| P.J. FAIN, II, | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. 3:20-CV-1034-JD-MGG |
| | ) |
| KILOLO KIJAKAZI, Commissioner of | ) |
| Social Security | ) |
| | ) |
|     Defendant. | ) |

**OPINION AND ORDER**

P. Fain applied for child's insurance benefits based on disability and supplemental security income, alleging that he is unable to work primarily due to ADHD, autism, and persistent depressive disorder. Mr. Fain was found to be not disabled in a July 2020 decision. Mr. Fain then filed this appeal, asking the Court to reverse the ALJ's decision and remand for further proceedings based on alleged errors with the residual functional capacity assessment. The Commissioner filed a response in opposition. Mr. Fain then filed his reply. As explained below, the Court remands the Commissioner's decision.

**I.    Factual Background**

Mr. Fain has worked part time at Kroger. (R. 18). Mr. Fain suffers from autism, attention-deficit hyperactivity disorder ("ADHD"), depression, oppositional defiance disorder ("ODD"), and post-traumatic stress disorder ("PTSD"). (R. 13). Mr. Fain applied for benefits in 2019. He alleges disability starting August 1, 2005. (R. 10). The ALJ issued an unfavorable decision on July 9, 2020. In that decision, the ALJ made the following residual functional capacity:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to simple work-related decisions and simple routine tasks with no assembly line work or strictly enforced daily production quotas, and few changes in a routine

> work setting. He can never interact with the general public but can occasionally interact with coworkers.

(R. 15). Finding a number of jobs that exist in significant numbers in the national economy that Mr. Fain can perform, the ALJ found that he is not disabled. The Appeals Council declined review, and Mr. Fain filed this action seeking judicial review of the Commissioner's decision.

## II.     Standard of Review

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the

claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

**III.     Standard for Disability**

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U. S. C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform past relevant work; and
5. Whether the claimant can perform other work in the community.

See *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii),

416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

## IV.   Discussion

Mr. Fain offers two arguments in support of reversal. He argues that: the ALJ cherry-picked evidence to support his decision and ignored contradictory evidence; and the ALJ erred in evaluating her subjective symptoms. The Court only addresses Mr. Fain's first argument because it agrees that the ALJ erred in cherry-picking the evidence to support his decision. The parties can address any remaining arguments on remand.

Mr. Fain asserts that the ALJ based his decision on cherry-picked evidence. The ALJ relied on evidence that Mr. Fain was able to graduate from high school and take coursework to become a machinist, and the ALJ indicated that he "nearly completed his requirements before losing his financial aid." (R. 19). Earlier in the decision, the ALJ acknowledged that although Mr. Fain only had two classes left, he could not return to school due to "financial reasons dependent on his grade point average." (R. 19). The ALJ also stated that "[t]he record shows the claimant was able to balance his school responsibilities with the demands of a part time job." (R.

19). The ALJ noted that Mr. Fain "has trouble with self-motivation," yet relied on his ability to shower independently, prepare simple meals, and assist with household chores in finding that he could sustain a full-time job. (R. 19-20). The ALJ also found that Mr. Fain's ability to work part-time as a nighttime stocker for two to three years outweighed his allegations that he was easily distracted and struggled to work quickly. (R. 20). Finally, the ALJ noted that despite having "trouble getting along with his grandmother," he was able to get along with coworkers and only had one instance of being disrespectful to a supervisor. (R. 20). He was otherwise "described as pleasant and appropriate with treating and examining sources." (R. 20).

    The ALJ did not consider the totality of the evidence and cherry-picked findings from the record that supported his decision. While the ALJ found that Mr. Fain graduated from high school and took classes towards becoming a machinist, the ALJ did not acknowledge all of the evidence regarding Mr. Fain's struggles with school. Mr. Fain failed five classes his junior year of high school and was forced to take summer school instead of working at an internship through Logan Community Resources the following summer. (R. 910). His senior year, three of his four classes were taken in the "emotional disability room." (R. 910). During his senior year, the school permanently took his laptop away due to being in chat rooms during class. (R. 912). He continued to fall behind on classes despite the distraction being removed. (R. 912). While he was able to graduate from high school, his GPA was a 1.8. (R. 913). After high school, he did enroll in classes at Ivy Tech to work on a technical certificate, but he was unable to finish the certificate. (R. 910, 921). He passed his first class, but he received a "D" in his second class due to missing assignments and failing to turn in his final project. (R. 910, 921). Vocational Rehabilitation had been assisting him financially with schooling, but due to his low GPA, Vocational Rehabilitation was unable to support him, and he was unable to return to Ivy Tech to

complete his courses. (R. 921). Furthermore, he only attended class for four hour a week while enrolled at Ivy Tech. (R. 918). While the ALJ acknowledged that Mr. Fain was forced to drop out of Ivy Tech due to financial difficulties associated with his GPA, the ALJ failed to discuss or acknowledge Mr. Fain's continued struggles with completing work in order to pass classes. The ALJ also failed to acknowledge or discuss the accommodations Mr. Fain required during high school in order to graduate. (R. 910-18).

The ALJ found the opinion of Mr. Ferguson, Mr. Fain's behaviorist, to be unpersuasive, noting that Mr. Fain was able to graduate from high school, nearly completed his coursework to become a machinist, and could balance his school responsibilities while working part time. (R. 21). This is a gross mischaracterization of the evidence. Mr. Fain graduated from high school with a 1.8 GPA, despite receiving accommodations from the school and help from his behaviorist and transition specialist, which the ALJ acknowledges in his recitation of the facts. (R. 17-19). While it might be accurate to state he "nearly completed his coursework to become a machinist," that ignores the fact that the reason he was unable to complete the coursework was due to a low GPA, indicating he was not doing well with his coursework. (R. 21, 921).

Moreover, the ALJ cherry-picked medical evidence in his descriptions of Mr. Fain's part time work as an overnight stocker at Kroger. His transition specialist[1], Ms. Wonisch, noted in late 2017 that although Mr. Fain desired more hours at work, he was struggling to complete his work in a timely manner. (R. 917). By early 2019, Ms. Wonisch noted multiple times that Mr. Fain had been avoiding work by hiding in the bathroom with his phone. (R. 918-19). Ms. Wonisch talked to Mr. Fain's supervisor at work to ask about helping Mr. Fain get more hours.

---

[1] A transition specialist works with school-aged adolescents as a transition between school and vocational rehabilitation. The transition specialist works with a student on behavioral issues, time management skills, job searches, resumes, and the interview process. *See* https://www.ziprecruiter.com/career/transition-specialist/what-is-how-to-become (last accessed July 27, 2022).

(R. 918). The supervisor informed her that Mr. Fain had "not [been] working as he should," and needed prompting to return to work. (R. 918). Mr. Fain also talked back to his manager when confronted about wearing headphones when he should not have been. (R. 918). The manager stated that he "want[ed] to wait and see how [Mr. Fain] does" before adding any more hours to his schedule. (R. 918). However, Mr. Fain's manager agreed that "if he can come to work on time, work for the entire shift[,] and show improvement in his attitude[,] he will slowly increase his hours." (R. 919). Mr. Fain was suspended from work for missing two days of work in a row without calling to inform his manager. (R. 920). Mr. Fain worked anywhere from 4-15 hours a week from 2017-2019, with his hours fluctuating based on a variety of factors, including his performance. (R. 917-20).

Mr. Fain's behaviorist, Mr. Ferguson, also reported that Mr. Fain has had his hours cut for working too slow, failing to complete the work as he was trained, and for missing work repeatedly. (R. 924-25). The ALJ incorrectly relied on Mr. Fain's ability to hold a part time job while attending school without considering both his limited hours at work and at school, as well as his continued struggles at work despite his limited hours. Between Mr. Fain's struggles with turning in coursework and continued difficulties on the job, it is impossible to find evidence to support the ALJ's finding that Mr. Fain was successfully "balanc[ing] his school responsibilities while working part time." (R. 21).

The ALJ also provides misrepresentations about Mr. Fain's work history in discussing medical opinions. The ALJ mentions that Mr. Fain is able to maintain routine supervision, as evidenced by his "steady employment" as an overnight stocker, and that he has worked to develop skills to "keep [] on pace at work." (R. 20-21). However, the evidence does not show any evidence that he has developed skills to keep on pace at work. On the contrary, the medical

record repeatedly shows that Mr. Fain struggles to keep up with work, and that his hours have been cut due to an inability to get his work done. (R. 917-26). The ALJ also states that his employment as a stocker indicates "he has been able to meet his employer's expectations for attendance, pace, and job performance." (R. 21). However, as discussed in detail above, the medical record repeatedly indicates that Mr. Fain struggled with attendance, pace, and job performance throughout 2017-2019. (R. 917-26). The ALJ ignores the many treatment notes from his behavior specialist and transition specialist that contradict the ALJ's findings.

In discussing Ms. Wonisch's opinion, the ALJ found that the evidence does not support her opinion that Mr. Fain needs constant supervision to complete tasks. (R. 21). The ALJ relied on Mr. Fain's ability to "manage his personal care, cook simple meals, use a bus, attend school, and work part time." (R. 21). The ALJ failed to properly consider or discuss the supervision Mr. Fain required to complete his personal care, cook simple meals, attend school, and work part time in his analysis of Ms. Wonisch's opinion. In March 2019, it was noted that he continued to struggle completing tasks on his own, and often looked to others to complete tasks for him. (R. 724). He struggled with putting forth effort to do things he did not wish to do. (R. 724). As discussed above, he struggled with attendance, pace, and job performance at his part time job at Kroger. Mr. Fain had his laptop taken from him by the school twice due to distractions during class. (R. 912-13). Letters were also sent home from the school regarding Mr. Fain's lack of effort and poor behavior. (R. 925). He fell behind on classes regularly and lost his financial assistance due to low grades. (R. 910-921). It was reported that he did not follow through on class assignments, and he has skipped classes when sent to other rooms to complete work. (R. 913). In October 2018, the behaviorist stated that Mr. Fain got irritated "very quickly" whenever asked to complete chores, and the behaviorist noted that he has had to address this issue "more

than any other single issue." (R. 925). In June 2019, it was noted that he needed prompts to do any tasks around the house. (R. 923). The medical record does not support the ALJ's assertion that Mr. Fain did not need supervision to complete his housework and homework or to stay on task at work.

Moreover, the medical record repeatedly indicates that although Mr. Fain is capable of completing personal care, he regularly refuses to do so. Mr. Fain frequently presented to treatment with fair hygiene. (R. 600-01, 604). His behaviorist noted in March 2019 that although Mr. Fain claimed his hygiene was not an issue for him, he encouraged Mr. Fain to admit that those around him found his lack of hygiene to be an issue, indicating that his hygiene was less than adequate. (R. 586). In early 2019, it was noted that he had "let his hygiene go" and his room was not clean, despite noting that the behaviorist had helped Mr. Fain clean his room recently, and they removed fifteen bags of trash from his room at that time. (R. 920). In March 2019, Mr. Fain's hygiene was "again very bad," and his behaviorist told Mr. Fain that he would not be allowed back in the car until his hygiene "improved drastically." (R. 926). The behaviorist noted that his body odor was strong enough to challenge the behaviorist's focus. (R. 926). In April 2019, the behaviorist noted that the last two times they went out into the community, his hygiene was "unbearable and not acceptable when he is working in the public." (R. 926). Mr. Fain admitted it was mostly laziness that kept him from completing his hygiene, and that he did not respect his adoptive mother's wishes on keeping either himself or his room clean. (R. 926). In April 2019, the behaviorist again helped Mr. Fain clean his room and informed Mr. Fain they would not go out into the community together if he was unable to keep his room clean. (R. 926). On this day, the behaviorist "carried out 21 trash bags … 12 forks, 20 spoons, and the smell [could] not be captured in words." (R. 926). On June 13, 2019, the behaviorist noted that

although Mr. Fain's room was "cleaner than in the past," it still smelled, and it was "far from [Mr. Fain's] best effort." (R. 923). Furthermore, the behaviorist noted that Mr. Fain only showered when he was being picked up by the behaviorist, and the behaviorist noted that he needed to improve to daily showering. (R. 923, 926).

The ALJ failed to acknowledge that although Mr. Fain is capable of managing his personal care, cook simple meals, and attend school and work, he has repeatedly required supervision and reminders in order to complete them on a regular basis. The ALJ's finding that the "evidence does not indicate he needs constant supervision to complete tasks" ignores the multiple treatment notes indicating he required at least some supervision and encouragement in order to complete the tasks mentioned by the ALJ. (R. 21). The ALJ repeatedly cherry-picked evidence in the medical evidence and failed to consider contradictory evidence. The ALJ must not cherry-pick evidence supporting a finding of non-disability while ignoring evidence that points to the contrary. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). This error is compounded by the fact that the evidence from the behaviorist, transition specialist, and school are all consistent with each other, yet the ALJ does not consider this contradictory evidence in analyzing opinion evidence or subjective symptoms.

The ALJ erred in cherry-picking evidence throughout the decision. On remand, the ALJ must properly consider and analyze all of the relevant medical evidence, including evidence contrary to a finding of non-disability. Accordingly, the Court reverses and remands for additional proceedings. The parties are free to address any remaining issues on remand.

## CONCLUSION

For those reasons, the Court REVERSES the Commissioner's decision and REMANDS for additional proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED:   August 2, 2022

                                           /s/ JON E. DEGUILIO
                                           Chief Judge
                                           United States District Court